## MIDDLETON SAVINGS BANK v. THE CITY OF DUBUQUE.

1. **Contract:** CONSTRUCTION: RECONVEYANCE. The mortgagor reserved in the mortgage the right, when the value of the mortgage property should exceed the amount of the debt secured, to dispose of such excess, the valuation to be determined by mutual agreement or by a reference to three disinterested persons as the parties might agree: *Held,* That the mortgagor could make such conveyance only after an agreement between the parties or a report of referees as provided by the contract; and that a conveyance made by the mortgagor upon its own valuation was not within the terms of the contract.

2. —— OPTION IN MORTGAGEE TO RECONVEY. A mortgage executed to secure the payment of bonds by a municipal corporation provided, that the mortgagees shall "not be held liable or responsible to the holders, or those who may hereafter become holders of the bonds of said city, or the interest thereon, for the payment of the same in any way, shape or manner whatever, but shall have free liberty to reconvey to said city any portion of the real estate herein described, and under any circumstances, and in any manner they deem expedient, without consulting in any manner the holders or owners of said bonds," &c.: *Held,* That the mortgage stood as security for the payment of the bonds in the hands of the transferees until the original mortgagees should act upon the reserved privilege by making a conveyance to the mortgagor; and that a mere transfer of the bonds did not operate to cancel the mortgage.

3. **Evidence:** DEED EXECUTED BY PRO TEMPORE OFFICER. Where the city charter, which is a public law, authorizes the appointment of a mayor *pro tempore*, a deed offered in evidence, purporting to have been executed by such an officer, on which the seal of the corporation is duly affixed,

and the execution duly attested by the recorder, and which was properly acknowledged and recorded, the officer certifying in the acknowledgment that the person executing the deed for the corporation was personally known to him as the identical person whose name is affixed to the deed as president *pro tempore* of the city council and acting mayor of the city, and that he acknowledged the instrument to be his voluntary act and deed as such president and acting mayor, &c., shows *prima facie* that the party thus executing such deed was at the time the acting mayor of the city, and may be admitted in evidence without further proof as to the official character of such acting mayor.

4. **Notice: TO PARTNERS.** Several persons, associated as partners, concluded negotiations for the purchase of real estate, in which negotiations they received actual notice of the existence of a prior incumbrance on the property; before the contract was reduced to writing and executed other partners were admitted, who had nothing to do with the negotiations, but subsequently joined in the execution of the contract; immediately after the contract was executed by the parties, other partners were admitted: *Held*, That all were charged with actual notice imparted to some of the partners in the original negotiations.

## *Appeal from Dubuque District Court.*

### MONDAY, JANUARY 15.

THE plaintiff holds ten bonds of one thousand dollars each, dated the 1st day of July, 1853, running from six to eleven years, with interest at the rate of ten per cent, payable semi-annually, issued and delivered by the city of Dubuque, for value, to F. S. Jessup and Company or bearer.

The city issued $20,000 of other bonds, which were negotiated and passed into other hands. To secure the payment of all these bonds, amounting to $30,000, the city, on the 10th day of September, 1855, executed and delivered to the said Jessup and Company a mortgage on certain real estate therein described. The mortgage is in the usual form, but contains the following stipulations and conditions: "The said city reserves the right, whenever the real estate therein conveyed exceeds in value the amount of the within named consideration, to dispose of

· such excess, the valuation to be determined at any time by mutual agreement, or by a reference to three disinterested persons, as the parties may agree," &c.

"It is also understood in the conveyance of this property to F. S. Jessup and Company, they shall not be held liable or responsible to the holders, or to those who may hereafter become holders of the bonds of said city, or the interest thereon, for the payment of the same in any way, shape or manner whatever, but shall have free liberty to reconvey to said city any portion of the real estate herein described, and under any circumstances and in any manner they may deem expedient, without consulting in any manner the holders or owners of said bonds," &c.

The plaintiff seeks to foreclose this mortgage so far as it was intended to secure the payment of the ten bonds above specified, now held and owned by it, and which still remained unpaid.

The Dubuque Harbor Company alone defend, setting up: *First.* That on the 2d day of April, 1856, the city conveyed to it, for value, a part of the mortgage premises (describing the same), without notice to it of the existence of said mortgage. *Second.* That the city had no authority to execute and deliver the mortgage in question. *Third.* That at the time the city conveyed as aforesaid to the Harbor Company, the mortgage premises exceeded in value the mortgage debt, there remaining still enough to pay the same; and, *Lastly.* That said mortgage was given only as security to said Jessup and Company while the bonds remained in their hands; that when said bonds were transferred to plaintiff, the mortgage had performed its office, and the said Jessup and Company were authorized to reconvey said land to the city, and the mortgage became consequently discharged and satisfied.

To this last and the third defense, the plaintiff demurs. *Firstly.* For that it is not stated in the answer that the

alleged excess in the value of the mortgage premises above the debt secured thereby, at the time of the defendant's purchase, had been ascertained, either by mutual agreement or by reference, according to the terms and conditions of said mortgage as above set forth.

*Secondly.* Because it is not averred in the answer that Jessup and Company had exercised or expressed a desire to exercise the right reserved to them to reconvey to the, city any portion of the mortgage premises, &c.

The demurrer was sustained against the exceptions of the Harbor Company.

The cause was then tried upon the other issues, and determined against the plaintiffs as to so much of the mortgage premises as had been sold and conveyed by the city to the Dubuque Harbor Company.

Both parties appeal, and agree that the cause shall be heard by this court, according to the first method for the trial of equitable causes.

*Austin Adams,* for the plaintiff, to the point that the court cannot be presumed to know that Patrick Quigley was, at the time of the execution of the deed to the Dubuque Harbor Company, president *pro tempore* of the city council of Dubuque, cited 1 Greenl. Ev., 9; *Broughton* v. *Blackman and Beardsley,* 1 Chip., 9. That knowledge of a prior unrecorded deed by one partner will avoid a subsequent deed to all the partners. 1 Pars. Cont., 64; 2 Eq. Lead. Cas., 44; *Quinn* v. *Fuller,* 7 Cush., 224; *Wigg* v. *Wigg,* 1 Atk., 382.

*T. C. Roberts, J. H. Shields* and *J. L. Harvey,* for the defendant. 1. The provision in the mortgage for determining the value of the property by agreement or reference was only to furnish proof that the contingency provided for had happened, and did not constitute a condition upon which the city reserved the right to convey. 2 Pars. Cont.,

527 ; *Merrifield* v. *Cobliegh*, 4 Cush., 178. 2. A substantial compliance is all that is necessary, whether the condition be subsequent or precedent; Story on Sales, § 251; *McAuley* v. *Bellinger*, 20 Johns., 88 ; *Torrey* v. *Millbury*, 21 Pick., 64 ; *Shaw* v. *Livermore*, 2 G. Greene, 342. 3. The signa-ture of Patrick Quigley, affixed to the deed of the Dubuque Harbor Company, as president *pro tem.* of the city council, is *prima facie* evidence that he was president *pro tem.* of the council ; Ch. 82, Laws 1846 and 1847 ; *Byington* v. *Allen*, 11 Iowa, 3. 4. The Dubuque Harbor Company was a purchaser, for a valuable consideration, without notice. 3 Sug. Ven., ch. 23, § 5 (marg., 453) ; *Wilson* v. *Miller* and *Beeson*, 16 Iowa, 111; *English* v. *Waples*, 13 Iowa, 57 ; *Barney* v. *McCarty*, 15 Id., 510.

LOWE, Ch. J. — The ruling upon the demurrer is sus-

1. CON-TRACT: con-struction: reconvey-ance.

tained as comporting best with reason, the intent of the parties, and a fair construction of the conditions of the mortgage.

The argument against the demurrer is exceedingly astute and plausible, but fails to command our assent, as being a little to subtle and refined to suit the business genius of the times. We are satisfied that the nice, and we may add, far fetched, distinctions insisted upon by counsel never entered the minds of the contracting parties, and we prefer, because always safest, to keep tolerably close to the language of the contract, as the best exponent of the true intent of the parties.

The right which the mortgagor reserves to create another estate in the mortgaged premises, at any time when the value thereof exceeds the debt secured, is, to say the least, a most unusual one in instruments of this kind, if not, indeed, inconsistent with the granting clause therein, and therefore should not be indulged or permitted to be claimed, beyond the limits fixed for its exercise in the contract.

Now, this right is coupled both with a condition and a limitation, namely : the condition is, that when the value of the land exceeds the debt, the mortgagor may dispose of the excess. But how is this excess of value to be ascertained, and by whom? The contract says, "*the valuation to be determined at any time by mutual agreement, or by reference to three disinterested persons, as the parties may agree.*"

This limitation to the exercise of the right in question, quite excludes the idea that the parties ever intended that the mortgagor should, upon his own volition and valuation, as the city did in this case, without regard to this clause of the contract, undertake to create an estate in the property mortgaged in the Dubuque Harbor Company. If it was, the necessity of such a claim in the contract is not apparent.

The mortgage contains another stipulation in favor of the mortgagee, novel and as unusual as the one just considered, to the effect that Jessup and Company are not to be held liable in any manner to the holders of said bonds whoever they may be, but are to be free to reconvey to said city any portion of the real estate described, in any manner or way they choose, without consulting any one who may chance to be the holder or owner of said lands.

2. —— option in mortgagee to reconvey.

The defense based upon this clause of the mortgage is, that it was given alone for the benefit of Jessup and Company, and not for their assignees, and that when the bonds were negotiated and passed from the ownership of Jessup and Company, it had fulfilled its office, and was in law, discharged, whether they had reconveyed to the city or not, and hence, in the answer, no such reconveyance is averred.

We think the more reasonable construction of the instrument, taken as a whole, including the above stipulation, is, that it was to stand as a security for the payment of the bonds, into whosesoever hands they might fall, until the

privelege to cancel or reconvey by Jessup and Company, should be claimed or exercised. This construction derives support from the evidence; in which it appears that one reason why Jessup and Company insisted upon the execution of the mortgage was, that it would facilitate the negotiation of the bonds; &c.

The stipulation is not that the mortgage should be void or the property reconveyed when the bonds should be assigned or negotiated, but it simply saves the right to Jessup and Company to reconvey the mortgage property whenever it should be their pleasure to do so. They have not done so, and for all we know or can know from the record, they may have agreed with the purchasers of the bonds, that they would not do so upon being themselves released from any legal responsibility. However this may be, the right or privilege to reconvey is personal to Jessup and Company, and the Dubuque Harbor Company is in no position to claim any benefit from this stipulation in the mortgage. Besides all this, the use which the defendants attempt to make of the same in their answer, is more in the nature of a conclusion of law, than a statement of any facts constituting a defense to the right of the plaintiffs to recover.

Passing the subject of the demurrer, we notice next the other three controverted facts in the case.

*First.* Was the execution of the mortgage to Jessup and Company proved?

*Second.* Could the court take judicial notice that Patrick Quigley was President *pro tem.* of the city council at the time of the execution of the deed to the Dubuque Harbor Company?

*Third.* Did the Dubuque Harbor Company have notice of the mortgage?

To each of these interrogative propositions we return an affirmative answer.

The mortgage to Jessup and Company, although recorded, was not acknowledged; nevertheless, its execution was not denied under oath, or by affidavit, and if any proof is required of its execution beyond the production under section 2967 of the Revision, it was adequately supplied by the testimony of the witnesses Farley and Robbins, one of. whom, as mayor of the city, executed the mortgage; the other, as recorder, attested it.

The act incorporating the city of Dubuque is a public act. It provides, among other things, for the appointment

3. EVI-
DENCE:
deed exe-
cuted by pro
tempore
officer.

of a mayor *pro tempore*. The deed offered in evidence by the Dubuque Harbor Company was executed by such an officer, with the seal of the city affixed and duly attested by the recorder, and properly acknowledged and recorded, the officer certifying in the acknowledgment that Patrick Quigley, who purports to have executed the deed from the city to the Dubuque Harbor Company, was personally known to him as the identical person whose name is' affixed to the deed as president *pro tempore* of the city council, and acting mayor of the city of Dubuque, and acknowledged the instrument to be his voluntary act and deed as such president and acting mayor, &c. This, *prima facie*, is proof that Quigley was, at the time, acting mayor of the city, and, coupled with what the court might judicially take notice of on this subject, rendered the introduction of ·the deed in question competent without further proof as to the official character of the said Quigley. *Byington* v. *Allen*, 11 Iowa, 3.

The next and last is the important point in this case, the one upon which the court below decided the contro-

4. NOTICE:
to partners.

versy in favor of the defense. It is the question whether the plaintiff's mortgage being unacknowledged, the defendants had notice of the existence of the same, at the time they became the legal or equitable owners, under the city, of a portion of the mortgage

premises. As we are inclined to hold differently from the court below upon this question, we may admit it to be a close one. The difficulty, however, does not arise so much from a conflict of testimony as to the effect in law which is to be given to certain facts, viewed in the light of the peculiar relations in which the parties stood to the transaction at the time. To see just what this relation was, we premise first, that between the city of Dubuque and the main channel of the Mississippi river were some sloughs and islands. The city contemplated an improvement of its harbor by filling up these sloughs and extending its streets to the main shore of the river, and then constructing a proper levee. In furtherance of this purpose it borrowed $30,000 of Jessup and Company, and gave a mortgage to secure the same on the new territory that would thus be added to the plat of the city by such improvement. It also proposed to convey a title to certain portions of this new extension to parties who would contract to make and complete said improvement.

About the 15th of February, 1855, the city council received a proposition from Charles Gregoire and H. L. Stout to make the contemplated improvement; the proposition was entertained and a committee of aldermen appointed to settle the terms and complete the contract. Of this committee, F. E. Bissell was the active member. After this, and before the contract was finally entered into, other parties were consulted and united with Gregoire and Stout, as partners or joint contractors. On the 27th of February, 1858, a written contract was executed between the city on the one part, through its mayor, J. P. Farley, and on the other by Gregoire, Stout, Emerson, Bush, Burt, Waples, Huff, Shields, Stewart and Burton, in which, for the consideration of certain work, to be done by the parties last named, the city stipulated to convey its title to certain real estate therein specified, being a portion of the

same property described in the mortgage to Jessup and Company. Bissell testifies, that during the negotiation, the subject of the Jessup mortgage was spoken of; he could not state the particular individuals with whom such conversation took place, but that it was had principally with Gregoire, Stout, Emerson and Huff; and although he could not state with which of the contractors, or just what was said, yet he was certain that the Jessup mortgage was talked over, for the nature of the contract which the city should give them, for the conveyance of the property, was discussed, and when he proposed a quit-claim deed to them from the city, it was said that this would not be a protection, as there was a mortgage on the property to F. S. Jessup and Company; and they requested such a contract as would be an indemnity against such an incumbrance. The deed to the Dubuque Harbor Company, made on the 2d of April, 1858, contains this stipulation : "And the city of Dubuque hereby covenants with the said Dubuque Harbor Company, their successors and assigns, to protect the title to said lands and islands hereby granted, from *all liens or incumbrances by mortgage*, if any, heretofore made by said city thereon." It was also shown in the evidence, that prior to the foregoing deed, the Jessup mortgage was the only incumbrance of said property. The recorder of the city, P. W. Crawford, also testified that he was present at the negotiation, and remembers that the Jessup mortgage was spoken of by both parties. The records of the city council show that H. L. Stout was a member of the council, and present at the meeting which authorized the mortgage to be given to Jessup and Company. Also, that Farley, who is a member of the Dubuque Harbor Company, was the mayor who executed said mortgage in the name of the city.

This is the substance of the testimony on the part of the plaintiffs, bearing upon the question of notice. That of

the defendants consists simply of a denial under oath by Emerson, Burt, Bonson, Bush and Stewart, that they had any notice of the incumbrance till after the execution of the contract; and also evidence tending to show that some of them did not become interested as parties until about the time the contract was executed, and others again not until the articles of incorporation were signed on the 6th of March, 1858, being some seven or eight days after the contract first above mentioned had been concluded.

The defense insist that such of the parties as were thus situated could not be affected by the notice, if any was given, first, because their relation to one another was that of tenants in common, and not partners; but if it was that of the latter, the supposed notice was ineffectual in law to charge those who bought into the partnership subsequent to the formation of the same. It seems that some seven or eight days after the contract with the city had been signed by the parties above named, the defendants entered into written articles of association among themselves, defining the object of the same and their several rights, duties and obligations. These articles clearly show the incidents of a legal partnership, and the fair presumption is that the same relation existed between them from the beginning, although it rested in parol. If, then, they were partners at the time the contract with the city was made, why are they not all affected with the notice given to Stout and Gregoire of the existence of the mortgage? The reply is, that some of them cannot be, for the reason that they came into the concern about the time the contract was consummated, took no part in the negotiation, and heard nothing of the mortgage. The answer to this, again, is, that they nevertheless did become parties to the contract before it was finally executed, because they signed the same; and in doing so they adopted the contract, with all its advantages and disadvantages, as made by their

copartners, and with it again their agency in making it, and are consequently alike chargeable with notice of any incumbrances upon the property as the immediate parties conducting the negotiation. 2 Lead. Cas. in Eq., part 1, 44, marg.

But, again, it is said, that Farley and Bonson were not members of the partnership at the making of the contract with the city, but became so when the articles of association were executed. Granted; but does this fact change the legal position of the firm with reference to the notice? They embarked at so early a stage in the same boat with the others, ere yet, indeed, it had weighed anchor, that they took the chances of the whole voyage. It is scarcely necessary to say that the subsequent change of the association into a corporate body wrought no change for the better in their legal rights, so far as it relates to the question under consideration.

We return, then, again to the question of notice: was it effected upon the defendants as a firm? We have already seen, from the authorities referred to, that notice upon one partner is binding upon all. We do not care to give any importance to the circumstance, that Farley and Stout were members of the city council at the time that the mortgage from the city to Jessup and Company was authorized to be executed. Their previous knowledge of the existence of the mortgage in this way is objected to, as not coming to them in the same transaction, and therefore not binding. We stop not to consider the soundness of this objection, as, in our judgment, the evidence without it is sufficient to fix the notice upon the defendants. We refer to the testimony of Bissell and Crawford. Their testimony is uncontradicted, yet it is attempted to be impaired and set aside on the score of being too uncertain and vague, because they are not particular to state just which one of the several parties spoke of the Jessup mortgage and what

was said. Indefiniteness as to who mentioned the subject of the mortgage is a matter of little moment; the important question is, was it agitated at all by any one of the contracting parties? Upon this fact, the evidence, so far from being vague, is very explicit. Both Crawford, the city recorder, and Bissell, testify to it directly and without any qualification. The latter testifies that he is *certain* of the fact, and gives his reasons therefor, among which are, that they insisted upon a contract which would give them protection against the Jessup mortgage. Some time after this, the city made to the defendants a deed for a portion of the mortgage premises, and in that deed the city specially stipulates to protect the grantees against any incumbrance by mortgage that might be resting upon the property, and this we think strengthens and corroborates Bissell in his version of the matter. Unimpeached and uncontradicted as these witnesses are, we cannot refuse to accept the facts deposed to by them as true, and this being so, we are brought to the necessity of reversing and changing the decree below, by giving the plaintiff a judgment of foreclosure upon all the property described in the mortgage, which is accordingly ordered.

Reversed.