STATE v. THOMAS.

(Filed April 3, 1906).

*Municipal Corporations—Powers of Mayor Pro Tem—Warrants in Criminal Cases.*

1. A mayor pro tem, appointed under the provisions of Revisal, section 2933, is authorized "to exercise the duties" of the mayor during his absence as fully as he could do if present.

2. The power conferred upon a mayor pro tem "to exercise the duties" of mayor during his absence includes that of issuing warrants in criminal actions.

WALKER, J., dissenting.

INDICTMENT against Henry Thomas, heard before *Judge Fred Moore* and a jury, at the February Term, 1906, of the Superior Court of UNION. There was a special verdict and upon the facts therein set forth His Honor adjudged that the defendant was not guilty and the State appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*A. M. Stack* for the defendant.

STATE *v.* THOMAS.

CLARK, C. J. The defendant was arrested upon a warrant for violation of a town ordinance in being "drunk and disorderly and using profane language upon the streets." He is indicted for resisting the officer in the discharge of that duty. His defense is that the warrant was void because signed by "Davis Armfield, mayor pro tem." The special verdict finds that Davis Armfield, an alderman of the town of Monroe, had been duly chosen mayor pro tem by the board of aldermen on 16 March, 1905, and was still exercising the duties of that office on 19 November, 1905, when he issued this warrant.

The Revisal, section 2933, provides: "The mayor shall preside at the meetings of the commissioners, but shall have no vote except in cases of a tie; and in the event of his absence or sickness, the board of commissioners may appoint one of their number pro tempore to exercise his duties." The defendant contends that the election only authorized the mayor pro tem to preside at the meeting. If so, the words used would have been "appoint one of their number pro tempore to preside at such meeting." But the Legislature prescribed that the purpose of the appointment of a pro tempore occupant of the office of mayor should be "to exercise his duties." The only question there is, what are "the duties" of the mayor. The very next section (2934) prescribed among his duties that of being a conservator of the peace and that he shall have within the city limits "the jurisdiction of a justice of the peace in all criminal matters," and the next section (2935) makes it his duty to execute the ordinances, laws and rules of the government and regulations of his town or city, and sections 3156-3162 in naming those by whom warrants in criminal actions may be issued, include "mayors or other chief officers of incorporated towns." "The duties of a mayor are to cause the laws of the city to be enforced, and to superintend inferior officers." 2 Bouvier Law Dict., "Mayor." A pro tem officer is a substitute who shall

discharge the functions of the office during the absence of the officer.

The mayor pro tem here was chosen in March and was still in office in November. It does not appear why the mayor was so long disabled. The election of the mayor pro tem must be taken as regular. This is not questioned in this case and could not be questioned collaterally in this mode. The only point is, taking the election of mayor pro tem as properly made, does the power conferred by the statute "to exercise the duties" of mayor include that of issuing warrants when the mayor could have done so. There is nothing to indicate that he is not like all other pro tem officers vested with all the duties of the principal whose place he temporarily occupies. In this very case, it would be singular if from 16 March to 19 November—more than eight months, all the duties of mayor of the town should go undischarged, save the least important one probably, that of presiding at the meetings of the board of aldermen or town commissioners. The language used by the Legislature was intended, we think, to provide that in case of the absence of the mayor, from sickness or other cause, the board of town commissioners should appoint one of their number "to exercise the duties" of such mayor till his return, as fully as he could do if present, in order that the public might suffer no inconvenience or detriment by reason of his absence.

The word "mayor" first occurs in English history in 1189, when Richard I substituted a mayor for the two baliffs of London. The Romans styled such officer *"prefectus urbi"* and originally the English title for such officer was either "bailiff" or "portreeve," just as the sheriff (who had, however, far greater functions than our officer of that title) was "shirereeve," i. e. sheriff. In 5 Words & Phrases, 4450, it is said that the word mayor comes from the old English word "maier," which means "power," "authority," and not from the Latin "major"—greater. He represents the power and au-

thority of the town, and the duty of presiding at meetings of the town commissioners is only one of the duties he exercises. While the power and duties of mayor may vary according to the charter of the town or the laws of the State, it is probably without any exception his duty to execute the laws and local regulations of his city and to supervise the discharge of their duties by the subordinate officers of the city government. Such an office could not be left vacant, without public inconvenience, during the illness or absence of the incumbent, and hence our statute provides a mode of selecting a substitute, a pro tem mayor, who shall "exercise his duties"—meaning all his duties (for there is no restriction) and as fully as he could have done.

Ingersoll, Pub. Corp., 221, says that when the mayor is absent "his office may be supplied by a pro tem election from among the members of the board, and the person thus chosen mayor pro tem has the powers and may perform the functions of the mayor, for the time being." Where a statute required for the validity of an ordinance "approval by the mayor" it was held that "approval by the mayor pro tem" was sufficient. *Saleno v. Neosho,* 127 Mo., 636; 48 Am. St., 653. The same was held, if the mayor by reason of his absence was unable to perform his duties. *Detroit v. Moran,* 46 Mich., 213.

In *Bank v. Dubuque,* 19 Iowa, 467, it was held that where the law authorizes the appointment of a mayor pro tem, a deed executed by such officer if otherwise regularly executed, is sufficient, as if executed by the mayor.

An officer pro tem is one who pro tempore—for the time being—is such officer, fully, completely, and he is, as Revisal, section 2933, provides, authorized "to execute the duties" of such office. This is true of a speaker pro tem of a legislative body (the most usual instance), who, as we know, can swear in members, issue subpœnas, or discharge any other function of the speaker "unless otherwise provided by law or the rules of the body." Cushing Leg. Assem., 313; and so of

any other officer appointed pro tem.   Upon the special verdict the jury should have been instructed to return a verdict of guilty.

Reversed.

WALKER, J., dissenting.   It cannot be questioned that there should be some way of filling a temporary vacancy in the office of mayor, as the prompt and efficient administration of the criminal law would thereby be promoted.   But while I recognize the necessity for such a provision of law and regret my inability to agree with the court that it now exists, the language of the Revisal, section 2933, quoted in the court's opinion, is to my mind so free from ambiguity and points so clearly to the absence from sickness or other cause of the mayor, as presiding officer and to his ministerial duties pertaining to that office that my assent to the conclusion of the court must be withheld.   It is impossible for me to read that section and not see that the Legislature is referring to the mayor as the presiding officer at the meeting of the commissioners and that the power given in that section to appoint one of their number to perform pro tempore his duties, has reference solely to the duties therein mentioned and imposed on him as presiding officer and not to his judicial duties.   This section relates to the legislative proceedings of the commissioners and has no apparent connection with the following section, which relates to the mayor's judicial functions.   Why require the commissioners to select one of their number to act pro tempore with judicial functions, when by section 2931 they are given the power to fill a vacancy in the office without this restriction.   As the mayor has the jurisdiction of a justice of the peace in all criminal matters arising under the laws of the State or the ordinances of the city, it was thought that, when he is absent or under a temporary disability, a justice could perform his judicial duties for him (Revisal, section 2934), and this, it seems,

STATE *v.* THOMAS.

has been the practice in such cases. If this be not so, and there is a *casus omissus,* the Legislature, and not this court, must provide for it. We must administer the law as we find it and cannot supply the omission by interpretation. The language of section 2933 of the Revisal is susceptible of but one construction which excludes the idea of a mayor pro tempore exercising any judicial function. He is not even a judicial officer *de facto,* as there must be some semblance of judicial authority before a person assuming to act as a judicial officer can be so regarded. The commissioners had no more right to appoint one of their number as mayor and thereby clothe him with judicial powers than they had to appoint a judge. Their act in that respect was utterly void and without any legal efficacy whatever. Entertaining the view that the person alleged to have been resisted was not, for the reason stated, a lawful officer, and that the defendant cannot therefore be convicted of the offense charged against him, I must dissent from the opinion and judgment of the court.