175 So. 352

GARNER, County Treasurer, v. JEFFER-
SON COUNTY ex rel. WHISLER.

6 Div. 158.

Supreme Court of Alabama.
June 24, 1937.

Ernest Matthews, of Birmingham, for appellant.

W. H. Mitchell and Bradshaw & Barnett, all of Florence, for appellee.

GARDNER, Justice.

This is a mandamus proceeding to require the county treasurer of Jefferson County to execute $500,000 par value refunding bonds heretofore regularly authorized by an election of the people.

The legality of the bond issue is not questioned, and but a single question is here presented for consideration, as follows: The county commission of Jefferson is composed of three members (Gen.Acts, 1931, p. 298, and Gen.Acts 1935, p. 157), with W. D. Bishop as its president, who is, by virtue of said act, vested with the powers and duties of the probate judge pertaining to the management and control of the county's fiscal and administrative affairs. Section 7, General Acts 1931, p. 300.

Section 38 of the General Bond Code (General Acts 1927, p. 543) reads as follows: "Execution and delivery of bonds:— Bonds of a county shall be signed by two or more officers of the county holding office at the time of such signing, one of which officers shall be the Probate Judge or other chief executive officer, and the seal of the county or of the Probate Court thereof shall be affixed to the bonds. Interest coupons attached to bonds may bear a facsimile signature of one or both of said officers. The delivery of bonds so executed shall be valid notwithstanding any change in officers or in the seal after the signing and sealing of the bonds."

As noted, this act contemplates the signature of the probate judge of the county, which duty now devolves on the president of the commission, as heretofore observed, under section 7 of the General Acts of 1931 as to Jefferson County.

The county authorities now desire to offer for sale the issue of bonds above

referred to, but W. D. Bishop, the president of the commission, is so stricken with illness as to be entirely incapacitated to attach his signature, and unable to furnish the same for a facsimile signature for coupons to be attached. A majority of the commission constitutes a quorum (section 9, General Acts 1931, supra) for the transaction of business, and such majority proceeded to the election of one of the commissioners (R. E. Smith) as president pro tem. of the county commission, and by resolution expressly authorized him to affix his signature to said issue of bonds. And by the same resolution expressly designated and directed respondent, Garner, as county treasurer, as the other officer of the county to execute said bonds by countersigning the same with said Smith, and furnishing his signature for facsimile signatures to the coupons to be affixed on said bonds.

Garner declines to act upon the theory that Smith is without legal authority in the premises, as he is not president of the commission, and refers to section 7 of said General Acts of 1931, supra, wherein the president of the commission is given all such authority with no provision for a president pro tem.

The sole question, therefore, is whether or not the county commission was within its legal rights in selecting Smith, a member thereof, as president pro tem. during the physical incapacity of Bishop, the president.

We are persuaded the commission had the inherent authority to so select a president pro tem., and to authorize him to sign these bonds, which is purely a ministerial act. McDonald v. McAlily, 206 Ala. 105, 89 So. 198; Merlette v. State, 100 Ala. 42, 14 So. 562. The commission possesses all the jurisdiction and power vested in courts of county commissioners and boards of revenue in this State (section 6, General Acts 1931, supra), which include legislative, judicial, and executive powers. Tuscaloosa County v. Alabama Great Southern Railroad Co., 227 Ala. 428, 150 So. 328; State v. McEachern, 231 Ala. 609, 166 So. 36; Section 6754, and section 6755, Code of 1923, as amended by Gen.Acts 1931, pp. 759–762, and Gen.Acts 1933, Ex.Sess. p. 201.

Clearly as to legislative assemblies, whenever by reason of sickness or other cause, the presiding officer is prevented from attending to the duties of his office, and not likely to be able to resume them for some time, it is usual to elect a presiding officer, pro tempore, to preside until the former is again able to attend, and the duties and functions of such temporary officer, if elected in place of a presiding officer who is a member of the body over which he presides, are ordinarily the same as those of the permanent president, during his absence.

In speaking to this subject, in section 314 of Cushing's Legislative Assemblies, the author observes: "But where the presiding officer is a member of the body over which he presides, the right to supply his place temporarily is admitted without any express provision to that effect either of constitution or law or by a rule of the assembly. * * * A temporary presiding officer authenticates papers by his signature." See, also, People ex rel. Cady v. Ihnken, 129 Mich. 466, 89 N.W. 72; 43 Corpus Juris, 514. And in State v. Thomas, 141 N. C. 791, 53 S.E. 522, 523, it is said: "An officer pro tem. is one who pro tempore —for the time being—is such officer, fully, completely." And in 46 Corpus Juris, 927: "An 'officer pro tem' is one who pro tempore (for the time being) is such officer."

It is therefore clear that, if the commission was authorized to select a president pro tem., such an officer was empowered to carry out the directions of the resolution and sign the bonds. The commission, as previously observed, sits in a legislative capacity as well as administrative and judicial. Certainly as a legislative body, it had authority to select a president pro tem. to preside in the absence of the physically disqualified president, and it was in such capacity, in the nature of a legislative body, that the provision was made for such presiding officer. No reason, therefore, appears why the commission should not select such president pro tem., that it may continue to function as an important governmental agency. And if authorized to select, it is clear the one so selected becomes for the time being the president of the commission. And as such president, for the time being, he has full power to place his signature to the bonds.

Our conclusion is the trial court correctly ruled, and the judgment of the court awarding the writ of mandamus is due to be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.