STATE v. CONLY.

(Filed May 13, 1902.)

1. TRIAL—*Prosecuting    Attorney—Solicitor—Homicide—Due    Process of Law.*

An associate counsel, in the absence of the solicitor, with the consent of tne court, may prosecute in a criminal action and upon conviction of defendant pray the judgment of the court.

2. ADMISSIONS—*Evidence—Prisoner—Criminal Law.*

Admissions made by a prisoner under arrest are competent evidence, if no threats or inducements are made.

3. HOMICIDE—*Instruction.*

The instruction in this case presents every phase of murder in the first degree, murder in the second degree, manslaughter and self-defense.

4. EVIDENCE—*Sufficiency—Homicide—Murder in the First Degree.*

The evidence in this case is sufficient to be submitted to the jury as to murder in the first degree.

INDICTMENT against Archie Conly, heard by Judge *A. L. Coble* and a jury, at November Term, 1901, of the Superior Court of ROWAN County. From a verdict of guilty of murder in the first degree and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*John S. Henderson, T. C. Linn,* and *B.˙B. Miller,* for the defendant.

CLARK, J. There was no error in refusing a motion in arrest of judgment, because the sentence of death had been prayed by counsel associated with the Solicitor, instead of by the Solicitor himself, who had been called off. The prayer for judgment is a purely formal matter, and the Judge can pass sentence whether it is prayed for or not. The Solic-

itor acts under the control of the Court, and has no pow
to discharge a defendant or enter a *nol. pros.* before judgme
without leave of the Court.   *State v. Moody,* 69 N. C., 52
Of course he could not have that power after verdict, simp₁
refusing to pray judgment.   Indeed, in the temporary ab-
sence of the Solicitor, the Court has the inherent power to
appoint an assistant or associate counsel to represent the
State.   5 Am. and Eng. Enc., 718 (1st Ed.).   In the state-
ment of case settled by the Judge, it is stated that the associ-
ate counsel who prayed the judgment "were recognized by the
Court as appearing for the prosecution or State,   *   *   *
and had appeared with the approval of the Solicitor and the
recognition of the Court from the beginning of the trial."

In *State v. Cameron,* 121 N. C., 572, relied on by the pris-
oner, it is said: "If that officer (Solicitor) should not be
present during the trial, then the case on appeal should be
submitted to the attorney who represents the Solicitor, or who
is prosecuting for the State with the sanction and approval of
the Court."

The exception that the prisoner has been deprived of a trial
by due process of law because the Solicitor was represented
by other counsel with assent of the Court as above stated, is
without merit, and requires no discussion.

There was no error in refusing the prayer to instruct the
jury that there was no evidence of murder in the first degree.

The evidence is that the prisoner said to one Todd, "Give
me a draw off your cigarette, if you want to.   If you don't
want to, you can go to hell.'

Todd said: "I won't give you a draw, and I won't go to
hell, either."   Just then the deceased came by and asked one
of the bystanders to go to his room, and said to Todd, "Duck,
what are you doing standing here?   Are you a dead man?"
Then the prisoner said to the deceased, "What in the hell have
you got to do with it?"   The deceased said, "I haven't any-

thing to do with it, my friend; I am not speaking to you."
Deceased said, "I am going home," and he and Todd walked
off, Todd in front. Prisoner said to deceased, "I don't care
nothing for a nigger like you," and deceased said, "I don't
care nothing for you either." Prisoner said, "Do you want
to fight?" And deceased said "No; I don't want to have
anything to do with you," and some one hollered, "Get him,
Archy," and the prisoner grabbed the deceased with his left
hand and made a pass at him with his right hand, and the
deceased threw up his hands and hollered, "Boys, don't let him
kill me like that." Deceased made a break and ran, and the
prisoner right behind, with Todd and two others following and
hollering to him, "Don't, Archy." Deceased ran about fifteen
yards and fell, and prisoner started to get on him; one of those
behind prisoner caught him by the coat. Prisoner was close
upon deceased, jumped on him and stabbed him twice after
he fell. The prisoner got down on the deceased and made
two or three motions with his knife, and deceased said, "Oh!
Oh!" Prisoner then got up and started off, saying, "I am
gone." Deceased died in five or six minutes. This is the
substance of the testimony of the witnesses. The prisoner
introduced no evidence.

The murder occurred about midnight. An hour after-
wards the prisoner met an acquaintance on the street and said,
"I cut a damned nigger over yonder at the dance," and
showed blood on his hand and had a barlow knife open in
his hand. The prisoner went to the house of Ella Jones, and
was found by the officer of the law at her house between the
mattress and the slats. He stated to the witnesses when in-
formed of the death of deceased: "Let him die and go to
hell." To another witness, the prisoner said, "Is he dead?"
and on being answered "Yes," said, "I aimed to kill him."
This last evidence was excepted to on the ground of duress.
The prisoner was under arrest, but the testimony was uncon-

tradicted that there were no threats or inducements, and the Judge properly admitted the admission.

The charge of Judge Coble is very full, and carefully presented every phase of murder in first degree, murder in second degree, and manslaughter and self-defense, and evidently follows with care the precedents settled by this Court. We find no error therein. The Court, among other things, charged the jury: "If the prisoner intentionally cut Geo. Davis, the deceased, with a knife, and intentionally killed him, and if the State has failed to show beyond a reasonable doubt that the killing was done with deliberation and premeditation, then the prisoner would be guilty of murder in the second degree, unless the evidence shows that the killing was done in self-defense or under such circumstances as make it manslaughter. * * * The jury are instructed that the prisoner can not be found guilty of murder in the first degree unless the jury are satisfied from the evidence beyond a reasonable doubt, not only that the prisoner is guilty of intentionally and feloniously killing the deceased, but it must appear from the evidence beyond a reasonable doubt that such killing was done wilfully, deliberately, and with premeditation, that is, that it was done intentionally and in pursuance of a fixed and premeditated purpose and design on the part of the prisoner to kill Gus Davis, the deceased. To constitute murder in the first degree, there must have been an unlawful killing done purposely and with premeditated malice. By premeditation is meant thought beforehand, for any length of time, however short. If a person has actually formed the purpose maliciously to kill and has deliberated upon it before he performs the act, and then performs it, he is guilty of murder in the first degree, however short the time may have been between the purpose and its execution. An intent to kill may exist in other degrees of unjustifiable homicide, but in no other degree is that intent formed into

a fixed purpose by deliberation and premeditation. The intent is defined as a steady resolve and deep-rooted purpose or design formed after carefully considering the consequences. If the prisoner intentionally killed the deceased in pursuance of a fixed design and purpose to kill formed upon premeditation and reflection, then he is guilty of murder in the first degree."

The prisoner has no cause to complain of the charge in any particular, nor of submission of the issue of murder in the first degree. The murderous assault, entirely without provocation, the subsequent pursuit with three men following him warning him not to harm deceased, one of whom caught hold of his coat and attempted to restrain him, the prisoner jumping on the deceased, lying on the ground, stabbing him fatally, twice, and then getting up and saying instantly, "I am gone," all this assault, pursuit and killing without provocation or anything said or done by deceased, calculated to arouse his passion, was certainly evidence tending to show premeditation and deliberate killing with malice, and was sufficient to be submitted to the jury.

Indeed, it is difficult to see how the jury could have found otherwise than murder in the first degree, if they believed the evidence, and of its credibility they were the sole judges.

No Error.