## W. H. BREWER v. J. S. WYNNE AND J. P. STELL.

### (Filed 15 October, 1913.)

1. **Municipal Corporations — Immoral Shows—Police Powers—Arrest.**

    Under the provisions of Revisal, 3731, and Private Laws 1907, ch. 1, applicable to the city of Raleigh, the chief of police of that city and his lawful officers or subordinates have the right to prevent or suppress an indecent or immoral show, given in any public place or in any place to which the public are invited, and in the proper discharge of these duties they may act immediately whenever such exhibitions are taking place in their presence or are imminent and their interference is required to prevent them; and in such case they may arrest, without warrant, any and all persons who aid or assist in such plays when, under all the facts and circumstances as they reasonably appear to them, such course is necessary for the proper and effective performance of their official duty.

2. **Same—Trials—Evidence—Nonsuit.**

    Upon a nonsuit in an action to recover damages for alleged false arrest and imprisonment, where the defense is interposed that the arrest was made to prevent the production of an immoral show in a place where the public was invited, by the defendants as lawfully authorized officers of a city to do so, and the evidence is conflicting as to whether the show was of the character which was prohibited, the question should be sub-

mitted to the jury, under the rule that in such instances the evidence which makes for plaintiff's right to recover must be taken as true and interpreted in the light most favorable to him.

3. **Municipal Corporations — Immoral Shows—Police—Powers—Arrest—Reasonable Apprehension.**

When it appears in an action for damages for false arrest and imprisonment, defended upon the ground that the arrest was made to prevent the exhibition of a prohibited immoral show, that the plaintiff was arrested and imprisoned by the chief of police, acting without a warrant, under the written instruction of the mayor, the act of imprisonment is one calling for explanation, and would constitute an actionable wrong unless it was sufficiently established that the show in question was indecent or immoral, and that the action of the officer was necessary to prevent or suppress the exhibition under all of the facts as they reasonably appeared to him.

4. **Same—Trials—Evidence—Nonsuits.**

The defendants in this action arrested and imprisoned the plaintiff, for which he brings his action for damages, and the defense is urged that they made the arrest in the discharge of their duties in preventing the exhibition of an immoral play, as they were authorized to do by the statute. While the evidence was conflicting, that of the plaintiff tended to show that he was under contract to heat the theater, and knew nothing of the character of the show, and was instructed by the manager of the theater to lock the doors and let no one enter, and turning to comply with this request he was arrested and incarcerated by the defendant chief of police, without offering resistance. There was further evidence that the show was not immoral, and that no exhibition thereof would be given without permission of the city authorities: *Held,* a motion to nonsuit was improvidently allowed.

5. **Constitutional Law—Judicial Warrants—Municipal Corporations —Ministerial Acts—Orders for Arrest—Immoral Shows.**

Judicial warrants, general in terms and unsupported by preliminary oath or sworn evidence and for conduct not committed in the immediate presence of the magistrate, are forbidden by the Federal Constitution, Amendment IV, and by the State Constitution, Art. I, sec. 15; and in this case it is *Held,* that the written order given by the mayor of Raleigh to the chief of police is ministerial in character, and must be so considered in determining whether the mayor authorized the act of arrest by the chief of police, and to what extent he may be held responsible for it.

BREWER v. WYNNE.

APPEAL by plaintiff from *Carter, J.,* at April Term, 1913, of WAKE.

Civil action to recover damages for alleged false arrest and imprisonment.

There was evidence to show that on the night of 16 February, about 7:30 P. M., plaintiff was arrested without warrant in the city of Raleigh by defendant J. P. Stell, chief of police, and confined in the city guard-house. And it was insisted for plaintiff that the evidence tended to show that the said chief of police was acting at the time under direct instructions of his codefendant, J. S. Wynne, then mayor, and that there was no legal excuse or justification for such arrest, and the same amounted to an actionable wrong.

It was contended for defendants that on the facts in evidence it appeared that plaintiff at the time was engaged in an unlawful act, to wit, the effort to bring on an immoral and indecent show or play at the Academy of Music in the city of Raleigh, and that defendant Stell, being present for the purpose and in the proper performance of official duty, was endeavoring to prevent and suppress the unlawful exhibition, and the arrest of defendant was justifiable and necessary to effect this purpose, and, further, that plaintiff was at the time engaged in resisting efforts of defendant to perform his duty, contrary to the statute.

At the close of plaintiff's testimony and again at the close of the entire evidence, there was motion to nonsuit. The latter motion allowed, and plaintiff excepted and appealed.

*Armistead Jones & Son, W. B. Snow, W. H. Lyon, Jr., J. W. Bunn, and Douglass & Douglass for plaintiff.*

*Jones & Bailey and B. M. Gatling for defendant Wynne; Walter L. Watson for defendant Stell.*

HOKE, J., after stating the case: Under the general law and the statutes more directly applicable to the city of Raleigh, the chief of police and his officers have the right to prevent or suppress an indecent or immoral show, given in a public place or in any place to which the public are invited. Revisal, sec. 3731;

163—21

Private Laws 1907, ch. 1. In section 3731 it is made a misdemeanor for "any person . . . to give or take part in any immoral show, exhibition, or performance where indecent, immoral, or lewd dances or plays are conducted in any booth, tent, room, or other place to which the public is invited, or if any one permit such exhibitions or immoral performances to be conducted in any tent, booth, or other place owned or controlled by him."

By section 28, Private Laws 1907, ch. 1, being the revised charter of the city of Raleigh, the chief of police is given general supervision over "nuisances and the abatement of same," etc. In section 32 he is charged with the duty of preserving the peace and good order of the city, of suppressing disturbances, etc. Section 34 makes provision in part as follows: "It is hereby made the duty of the police department and officers, at all times of the day or night, and the members of such force are hereby thereunto empowered, to especially preserve the public peace, prevent crime, detect and arrest offenders, suppress riots and unlawful gatherings which obstruct free passage of public streets, sidewalks, parks, and places . . . carefully observe and inspect all places of public amusements, all places of business having a license to carry on any business, and to repress and restrain any unlawful, disorderly conduct, or practice therein."

In the proper discharge of these important duties, the chief of police or his lawful officers and subordinates may act immediately whenever one of these unlawful exhibitions is taking place in their presence or where its performance is imminent and their present interference is required to accomplish the purpose; and in such case they may arrest without warrant any and all persons who aid and assist in such plays and shows whenever, under all the facts as they reasonably appear to them, such course is necessary for the proper and effective performance of their official duty. This, we think, presents the correct interpretation of the statutory provisions controlling the matter, and the position is in accord with our cases dealing generally with this subject, as in *Martin v. Houck*, 141 N. C., 317; *Sossaman v. Cruse*, 133 N. C., 470; *S. v. Campbell*,

·107 N. C., 948-953; *S. v. Sigman,* 106 N. C., 728; *S. v. Mc-Ninch,* 90 N. C., 695; *Neal v. Joyner,* 89 N. C., 287.

While we uphold the right of the police officials to arrest without warrant in proper instances, and do what is reasonably required to prevent or suppress an illegal exhibition, we do not take the view of this case, as it now appears, which seems to have impressed the court below. It is fully understood that when a nonsuit is ordered, the evidence which makes for plaintiff's right to recover must be taken as true and interpreted in the light most favorable to him, and considering the case under that well established rule, we are of opinion that the cause should have been submitted to the jury.

From the facts in evidence it appears that on the night in question the plaintiff was arrested without a warrant and imprisoned for a time in the city guard-house. That this was done by defendant Stell, the chief of police, acting under written instructions from his codefendant, J. S. Wynne, then mayor, to prevent or suppress the exhibition of the play called "The Girl from Rector's." This of itself is an act which calls for explanation, and would constitute an actionable wrong, unless, as heretofore stated, it is sufficiently established that the play in question was indecent or immoral and that the action of the officer was necessary to prevent or suppress the exhibition under all of the facts as they reasonably appeared to him. Speaking more directly to this question, the plaintiff, a witness in his own behalf, testified: "That he had recovered recently from a long typhoid spell, and not very strong; that he was at the theater on the night in question, being under a contract to supply heat for the building, and while standing near the door he was requested by J. S. Upchurch, the local manager of the theater, to lock the doors and not to let any one in until he said so." That the witness turned to comply with the request. The defendant Stell coming up at the time, seized the witness's hands, took the keys away from him, and said to Mr. Denning, a policeman, 'Arrest this man and lock him up.' That this was done, and the plaintiff, the officer holding him, was taken down the stairway and through a crowd of a thousand people and confined in the city guard-house at or near the market." That

witness had not locked the door, but same was still swinging when defendant came up, and that witness didn't strike Mr. Stell or in any way try to resist the arrest; that witness had no personal knowledge of the character of the play, and was there only to heat the building in compliance with his contract to do so whenever a play was put on. That next morning he was taken before the police justice, and they said they had no charge against him, etc.

J. S. Upchurch, a witness for plaintiff, among other things, testified that: "Plaintiff was there under his contract to heat the house; that witness had gone to the mayor that day or the day before and offered to put up bond as to the character of the show, and was told by the mayor that he had made up his mind to stop it, and witness replied 'All right'; and further, on the night in question, it was not the purpose to put on the show that night unless there was an order permitting it from the Superior Court judge, before whom proceedings were pending to test the question. That the doors had not been opened that night and no audience had been admitted, and the witness had directed the doors to be locked with the purpose of keeping every one out until the action of the judge could be ascertained. That plaintiff was just out of bed and was very weak that night," etc.

There is much evidence in the record to the effect that "The Girl from Rector's" was an immoral and indecent play; that plaintiff was there to assist in having the same performed, and was engaged at the time in active resistance to the officer, and tending to show, further, that it was necessary to presently arrest the plaintiff in order to prevent the exhibition; but this comes from the testimony of defendants or from the cross-examinations of plaintiff's witnesses, and may not be considered in the case as now presented. Under the principle as heretofore stated, we are allowed to consider only the facts making for plaintiff's right, and it does not follow as a legal conclusion from his version of the occurrence that his arrest without warrant was justifiable.

It is urged for defendant that the act complained of was done under written orders of the mayor, and being a judicial

act, no responsibility should attach unless he was shown to have acted corruptly or without power in the premises. It may be that under the statutes applicable to the city of Raleigh, some portion of the judicial functions of a justice of the peace are still left with the mayor, but if this be conceded, we do not think the principle relied upon can avail in the present instance. These judicial warrants, general in terms and unsupported by preliminary oath or sworn evidence and for conduct not committed in the immediate presence of the magistrate, are not recognized in the laws of this country. They are forbidden by the constitutions of both State and Nation. North Carolina Constitution, Art. 1, sec. 15; Constitution of the United States, Amendment IV. The order in question here, however, is not and does not purport to be a judicial warrant. It is clearly ministerial in character, and must be so considered and dealt with in determining whether the defendant J. S. Wynne authorized the act of his codefendant Stell, and how and to what extent he may be responsible for it.

There is error in the order of nonsuit, and the same must be set aside.

Reversed.