STATE v. J. D. GUPTON.

(Filed 25 February, 1914.)

Criminal Law — Warrants for Arrest — Sufficient Evidence—Self-Defense—Amendments—Court's Jurisdiction.

The complaint and warrant of arrest should be construed together, and when so construed, and within the jurisdiction of the court issuing them, if an offense has been charged, it is sufficient for the officer to make the arrest, no particular form being required; and in this case it is held that though the complaint and warrant might be too indefinite in allegation to sustain a conviction, except upon amendment which the magistrate had authority to make or authorize, it was error for the judge to exclude the defendant's evidence of self-defense as a justification for killing the one whom he had attempted to arrest under the warrant, because the warrant was insufficient and void. Having charged an indictable offense, though generally and defectively, it was sufficient as a justification of the arrest, on the trial of defendant for the murder of the party against whom it was issued by the justice of the peace. Arrests made under process, void or merely defective, discussed by WALKER, J., citing and applying S. v. Jones, 88 N. C., 671.

166—17

APPEAL by defendant from *Peebles, J.,* at Fall Term, 1913, of VANCE.

This is an indictment for the murder of Charles Snyder on 1 February, 1913. It will not be necessary to state more than a part of the testimony introduced in behalf of the prisoner, as the appeal turns upon the question whether there was any evidence of self-defense, the conviction being for manslaughter and the sentence ten years imprisonment in the county jail, with directions that he may be required to work on the public roads.

The prisoner's defense was that he was in the act of executing a warrant for the arrest of the deceased, when he was attacked by the deceased and his wife with deadly weapons, his life was put in jeopardy, and he shot the deceased in justifiable self-defense. He offered to prove the affidavit and the warrant issued therein by the justice of the peace, as follows:

STATE OF NORTH CAROLINA—Vance County.
Henderson Township. Before W. H. Grissom, J. P.

STATE *v.* . . . . . . . . . .

Rut Johnson, being duly sworn, complains and says that at and in said county, and in Henderson Township, on or about 1 February, 1913, Charles Snyder did unlawfully and willfully assault with a pistol and shooting on public highway, against the form of the statute in such cases made and provided, contrary to law and against the peace and dignity of the State.

RUT JOHNSON.

Subscribed and sworn to before me this 1 February, 1913.
W. H. GRISSOM, J. P.

NORTH CAROLINA—Vance County.
Henderson Township.

*The State of North Carolina,*
*To any Constable or other lawful officer of Vance County—*
*Greeting:*

You are forthwith commanded to arrest Charlie Snyder and safely keep so that you may have him before me at my office in

STATE *v.* GUPTON.

Henderson, or some other magistrate of said county, immediately, to answer the above complaint and be dealt with as the law directs.

Given under my hand and seal, this 1 February, 1913.

                                        W. H. GRISSOM, J. P.

The State objected to the evidence, upon the ground that the warrant was void, for that, on its face, it charges no offense. The objection was sustained, and the defendant excepted.

The prisoner then testified in his own behalf: "I went to the Boon house with Bud Hamlet; went to the front door and sent him to the back door. I went in and asked for Mr. Snyder; did not curse or use violent language nor conduct myself in a rude and violent manner, as testified by Mrs. Boon. I found Snyder on the back porch, and told him I was an officer and had a warrant for him, and for him to consider himself under arrest. He did not give me time to get out the warrant and show it to him or read it to him. He became violent and cursed, and said he would not be taken. We then started back through the house, I in front, and Hamlet was with Snyder. Mrs. Snyder was not there when we went in, but as we started out she came in and was very violent and said we should not take him. I was talking to her when Mr. Hamlet called for help. As I turned she took a large lamp and threw it at Hamlet. It missed him and struck the house, broke the lamp or chimney and spilled oil on Snyder and Hamlet and scattered glass about. She then got a pistol and shot me through the shoulder; the ball lodged just under the skin in my back. Just then Snyder cried out, 'God damn you, I'll kill you!' I looked, and he was in the act of striking me with an open knife. I threw up my pistol and fired at him and he began to fall; she continued firing, and I caught Snyder and held him between me and her. When she stopped shooting, I let him go down and went out and did not come in any more. As I went out I saw Mr. Sid Huff near his home, and called to him to come and help; that I was shot. I went to him and he brought me to the doctor; as I was going to him, Mrs. Snyder came out and shot me. I did not turn back nor threaten to shoot after I came out of the house. I was taken

to the hospital. At the time I shot Snyder he and his wife were both attacking me; she was between me and one door with a pistol, and he was between me and the other door with an open knife. I had no way to escape. The ball I shot had a steel jacket."

Bud Hamlet, witness for the defendant, testified: "I went with Mr. Gupton at his request. Mr. Snyder was on the back porch at Mrs. Boon's, and Gupton went through the house to him; took him by the arm and told him he was arrested. I don't know whether he said anything about the warrant. He did not read it. As we were going through the house to the front door, Snyder attacked me and Mrs. Snyder threw a lamp at me, which missed and broke against the house, scattering oil and glass on me and Snyder. She then got a pistol and shot it two or three times. One ball hit the end of my finger and then went through Mr. Gupton's shoulder. Snyder got out his knife and was striking at Gupton when he fired. Gupton then caught hold of him and held him up a bit and let him down on the floor when Mrs. Snyder stopped shooting, and left. Mrs. Snyder followed him to the door, and shot at him as he was leaving. He did not turn back any more, but went on to Mr. Huff, who brought him to the doctor. Gupton did not curse or act in a violent manner, and only shot at the time he was being attacked. Mr. and Mrs. Snyder were drunk and cursing. I have been in jail for making and selling liquor."

W. H. Johnson, for defendant, testified: "I am a merchant and have a store near the Harriet Cotton Mills. On that Saturday afternoon I let Mr. and Mrs. Snyder have a horse and buggy to go to town. Upon their return they were drunk, driving fast, cursing, and shooting a pistol or pistols on the street near my store. They shot over my home and over the homes of Mr. Adams and Sadie Johnson. I phoned to Sheriff Royster about it, and he told me to get a warrant from the nearest justice and give it to the officer he would send over there. I sent my brother for the warrant to Squire Grissom, and it was given to Mr. Gupton on his arrival. He started after Snyder, taking Bud Hamlet with him."

STATE v. GUPTON.

There was other evidence tending to corroborate these witnesses, and also evidence on the part of the State tending to contradict them in material respects, and to show that the prisoner did not act in self-defense when he shot and killed Charles Snyder.

The court charged the jury, in part, as follows: "The defendant had no lawful authority to arrest the deceased. He had a paper that he called a warrant, but upon inspection of it the court is of the opinion that that paper was void upon its face, and an officer or anybody who undertakes to execute a paper is bound to see that it is a lawful paper. He is not justified in executing it unless it is a lawful paper, and the court is of the opinion that that paper was absolutely void, and, therefore, afforded no justification to the prisoner.

"The court charges you that there is no evidence of excusable homicide, and it is your duty to find the prisoner guilty of murder in the second degree, or manslaughter."

Exceptions were taken to each of these instructions. The defendant appealed from the judgment upon the verdict.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Henry T. Powell and T. M. Pittman for defendant.*

WALKER, J., after stating the case: The rejection of evidence and the instruction given to the jury, that there was no evidence offered of self-defense, were erroneous. They were based upon the mistaken view that the complaint and warrant were void, as no criminal offense was stated in them. The complaint charges that an unlawful and willful assault had been committed by Charlie Snyder, who was afterwards killed by the prisoner. The accusation is not expressed in very formal or technical language, but it is sufficient to show that a crime had been committed by Snyder. If he had appeared to answer the charge, he could have required that the offense be stated with greater particularity, so that he could know how to defend himself (Revisal, sec. 1467; *S. v. Pool,* 106 N. C., 698); but this he did

not do. The justice could have amended the proceedings of his own motion, under that section. This contemplates, of course, that magistrates, not learned in the law, may sometimes issue papers defective in form, and even in substance, but the method of correction is provided by the statute. An unlawful assault is a crime, and though not stated in the complaint and warrant with technical accuracy, this does not invalidate the warrant. It is but a defective statement, being too general; but the nature of the crime sufficiently appears for the purpose of the arrest and the justification of the officer in making it. The affidavit and warrant must be read together, and so construed. *S. v. Davis,* 111 N. C., 729; *S. v. Wilson,* 106 N. C., 718. It is not expected nor required, in the absence of special provision to the contrary, that an affidavit or complaint should be in any particular form, or should charge the crime with the fullness or particularity necessary in an information or indictment. 12 Cyc., 294.

But it is useless to emphasize the error in the ruling of the court by argument. This Court has held in a similar case that such a warrant confers lawful authority upon the officer to arrest the accused. *S. v. Jones,* 88 N. C., 671. The warrant in that case was for larceny, and the word "feloniously" was not used in describing the offense, nor was the ownership of the property alleged. In the last particular it is closely analogous to this case. Here the name of the person upon whom the assault was made was not stated. The Court there held that while the defects would have been fatal in an indictment for the larceny, the law in the case of warrants does not require the same certainty or particularity as in the formal charge by a grand jury, and one reason for this is that in the latter case the prisoner is entitled to be informed of the accusation against him in such manner that he may be enabled to make his defense. The Court concluded, therefore, that although a warrant may be defective in form, or not strictly legal, if it is issued for a crime within the jurisdiction of the justice, the officer to whom it is directed, if a regular one who is bound to obey it, or if a special one who, though not bound to obey it, undertakes to

execute it, is protected equally, in both instances, by it. And for this statement of the law we have the authority of 1 Hale Pleas of the Crown, 460, "that although the warrant of the justice be not in strictness lawful, as if it express not the cause particularly enough, yet if the matter be within his jurisdiction as a justice of the peace, the killing of such officer, in execution of his warrant, is murder; for in such case the officer cannot dispute the validity of the warrant." This passage from Hale was cited with approval in *Boyd's case,* 17 Ga., 194, with this comment: "If this be law—and who will doubt its reasonableness?—it is decisive of this exception. It would be monstrous to lay down a different rule. It would put in jeopardy the life of every officer in the land. It never could be intended that they should determine, at their peril, the strict legal sufficiency of every precept placed in their hands." This view is also supported by *Mackalley's case,* Croke, James, 280 (9 Coke Rep., 117), wherein it was decided by all the judges, assembled in conference to resolve upon what the law was upon the record, amongst other things, that if there be error in awarding process, or in the mistake of one process for another, and an officer be slain in the execution thereof, the offender shall not have the advantage of such error, but that the resisting and staying of the officer, when he comes to make an arrest in the king's name, is murder. See, also, *Rex v. Croker,* 2 Chitty, 138; *King v. Wilkes,* 2 Wet. Rep., 151; 2 Hale P. C., 111; Chitty's Cr. Law, 41, and 2 McLain's Cr. Law, sec. 922, where the subject is carefully discussed, with a full citation of the authorities.

There are other considerations favoring the validity of the complaint and warrant, so far as their protection to the officer in making the arrest is concerned, but they need not be mentioned.

The deceased mistook his remedy. He should have submitted to the arrest, and asserted his right to a better warrant at the hearing, instead of defying the officer and assuming a hostile attitude towards him, endangering his life by the use of a deadly weapon, and actually encouraging his wife to attack him

with a pistol, with which, acting in concert with her husband, she severely wounded him. He could not, in this way, take the law into his own hands and become the aggressor.

The evidence as to the complaint and warrant should have been admitted. If this had been done, under the peremptory charge of the judge, we would be compelled here to interpret the evidence in the most favorable light for the prisoner. When thus viewed—he not being deprived of the legal right to defend himself because of any mere formal defect in the complaint and warrant, by reason of the generality of the charge, if it can be seen that an offense is alleged—it becomes apparent that the evidence should have been received and the case submitted to the jury, so as to give the prisoner the full benefit of the principle of self-defense, with proper instructions bearing upon that feature of the case. Whether he acted strictly in self-defense, or used excessive force or violence, are questions for the jury, who should be guided, of course, by directions of the court as to the law. He must be judged by the circumstances as they appeared to him at the time, the jurors being the judges of the reasonableness of his apprehension that he was about to be killed or to receive great bodily harm. *S. v. Barrett,* 132 N. C., 1005.

The exception of the prisoner to the rejection of the evidence, as above indicated, was well taken, and must be sustained. The reference in the charge to the insufficiency of the complaint and warrant was also objectionable. Other errors are assigned, but they need not be considered.

New trial.