STATE v. WILLIAM F. FURMAGE.

(Filed 2 July, 1959.)

**1. Indictment and Warrant § 6—**
   The Constitution of North Carolina does not designate officials who are or may be clothed with authority to issue warrants, and therefore the General Assembly may designate such officials.

**2. Constitutional Law § 6—**
   Matters of public policy are in the exclusive province of the General Assembly.

**3. Constitutional Law § 10:   Statutes § 6—**
   Every presumption is to be indulged in favor of the constitutionality of a statute.

**4. Constitutional Law § 6—**
   The General Assembly has full legislative powers unless restrained by express constitutional provision or necessary implication therefrom.

**5. Solicitors § 3—**
   A solicitor is an official of the court and is vested with important discretionary powers some of which, like the power to enter a *nolle prosequi*, are *quasi*-judicial in nature.

**6. Constitutional Law § 5:   Indictment and Warrant § 6—**
   The provisions of Chapter 634, Public-Local Laws 1916, sec. 6(f), authorizing the solicitors of the Recorders Courts of Robeson County to issue warrants of arrest are valid and are not in conflict with Article I, Section 8 of the Constitution of North Carolina, since the issuance of warrants does not involve the exercise of the supreme judicial powers within the meaning of that term as used in this section of the Constitution.

APPEAL by the State from *Hobgood, J.,* January Criminal Term, 1959, of ROBESON.

This appeal is from a judgment quashing two warrants, each charging defendant with a misdemeanor of which the Recorder's Court of Red Springs District, Robeson County, had original jurisdiction.

In said Recorder's Court, defendant's motions to quash the warrants, aptly made, were overruled. Thereupon, defendant pleaded not guilty. Upon trial, defendant was found guilty of the criminal offenses charged in the warrants. Judgments were pronounced. Defendant appealed.

In the superior court, defendant's motions to quash the warrants, aptly made, were allowed; and judgment, in accordance with the court's ruling, was entered. The State, pursuant to G.S. 15-179, appealed.

*Attorney General Seawell, Assistant Attorney General Love and Bernard A. Harrell, Member of Staff, for the State.*
*Britt, Campbell & Britt for defendant, appellee.*

BOBBITT, J.  The Recorder's Court of Red Springs District, Robeson County, is one of six district recorders' courts in Robeson County created by Chapter 634, Public-Local Laws of 1915.

Section 6(f) of the 1915 Act provided: "Warrants may be issued by the recorders of said courts or by any justice of the peace of Robeson County, made returnable to said courts, for any person or persons charged with the commission of any offense of which the said courts have jurisdiction; . . ."

The 1915 Act was amended by Chapter 572, Public-Local Laws of 1925; by Chapter 333, Public-Local Laws of 1927; and by Chapter 22, Public-Local Laws of 1937.

The 1927 and 1937 amendments, in pertinent part, provide: "That the prosecuting attorneys of the recorders' courts of Robeson County, as provided for by Public-Local Laws of one thousand nine hundred and fifteen, chapter six hundred thirty-four, shall have full power and authority to issue warrants, summons, subpoenas, commitments and administer oaths, and all other papers incident to the dispatch of business in said courts, . . ."

The warrants, issued by C. Durham Ratley, Solicitor of the Recorder's Court of Red Springs District, Robeson County, upon his examination under oath administered by him of one J. H. Creech, commanded the arrest of defendant to answer the charges set forth in the appended affidavits of Creech. The warrants were returnable to said recorder's court. "The affidavit and warrant must be read

together, and so construed." *S. v. Gupton,* 166 N.C. 257, 80 S.E. 989; *Moser v. Fulk,* 237 N.C. 302, 74 S.E. 2d 729, and cases cited.

There is no contention that the warrants failed to allege facts sufficient to constitute criminal offenses, or that said recorder's court did not have jurisdiction of the criminal offenses therein charged, or that C. Durham Ratley was not the duly qualified solicitor or prosecuting attorney of said recorder's court.

Judge Hobgood, allowing defendant's said motions, quashed the warrants upon the ground that, "insofar as said public-local laws purport to confer authority on Solicitors of the Recorders Courts of Robeson County to administer oaths and to issue warrants for arrest," they are null and void "for that the same are in violation of Article I, Section 8, of the North Carolina Constitution."

Article I, Section 8, Constitution of North Carolina, provides: "The legislative, executive, and *supreme judicial powers* of the government ought to be forever separate and distinct from each other." (Our italics) Originally, this provision (Article I, Section 8) was Section 4 of "A Declaration of Rights" of the Constitution of 1776. See, The Constitution of North Carolina, Connor and Cheshire.

Article I, Section 15, which contains the only specific reference to warrants, provides: "General warrants, whereby any officer or messenger may be commanded to search suspected places, without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted." Originally, this provision (Article I, Section 15) was Section 11 of "A Declaration of Rights" of the Constitution of 1776. See, The Constitution of North Carolina, Connor and Cheshire. It relates to the essentials of a valid warrant. *Brewer v. Wynne,* 163 N.C. 319, 79 S.E. 629.

Article IV, Section 12, of our organic law, incorporated therein by the Convention of 1875, provides: "The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it as a coordinate department of the government; but the General Assembly shall allot and distribute that portion of this power and jurisdiction which does not pertain to the Supreme Court among the other courts prescribed in this Constitution or which may be established by law, in such manner as it may deem best; provide also a proper system of appeals; and regulate by law, when necessary, the methods of proceeding in the exercise of their powers, of all the courts below the Supreme Court, so

far as the same may be done without conflict with other provisions of this Constitution."

Article II, Section 29, providing, in part, "(T)he General Assembly shall not pass any local, private, or special act or resolution relating to the *establishment* of courts inferior to the Superior Court," (our italics) did not become a part of the Constitution of North Carolina until January 10, 1917, that is, subsequent to the passage of the 1915 Act creating the Recorder's Court of Red Springs District, Robeson County. Defendant makes no contention that said public-local laws are invalid as violative of Article II, Section 29. In this connection, see *Provision Co. v. Daves*, 190 N.C. 7, 128 S.E. 593; *S. v. Horne*, 191 N.C. 375, 131 S.E. 753; *Williams v. Cooper*, 222 N.C. 589, 24 S.E. 2d 484; *In re Wingler*, 231 N.C. 560, 565, 58 S.E. 2d 372; *S. v. Norman*, 237 N.C. 205, 210, 74 S.E. 2d 602. Compare, *In re Harris*, 183 N.C. 633, 112 S.E. 425, and *S. v. Williams*, 209 N.C. 57, 182 S.E. 711.

No provision of the Constitution of North Carolina designates the officials who are or may be clothed with authority to issue warrants. The officials authorized to issue warrants are those upon whom such authority has been conferred by the General Assembly.

G.S. 15-18 provides: "The following persons respectively have power to issue process for the apprehension of persons charged with any offense, and to execute the powers and duties conferred in this chapter, namely: The Chief Justice and the associate justices of the Supreme Court, the judges of the superior court, judges of criminal courts, presiding officers of inferior courts, justices of the peace, mayors of cities, or other chief officers of incorporated towns."

In addition to the authority conferred by G.S. 15-18, the General Assembly, by said public-local acts, has specifically conferred on the solicitor of the Recorder's Court of Red Springs District, Robeson County, the power to issue warrants. Defendant does not attack these statutes on the ground they are public-local acts. Hence, insofar as Article I, Section 8, Constitution of North Carolina, may be relevant, the said solicitor's authority has the same status as if conferred by G.S. 15-18.

In *S. v. Thomas*, 141 N.C. 791, 53 S.E. 522, the authority of the Mayor of Monroe to issue a valid warrant was not challenged. The office imposed upon the mayor both administrative and judicial duties. The question raised was whether under applicable statutes the board of aldermen could confer the mayor's authority to issue warrants upon the person chosen to act (in the absence of the mayor) as mayor *pro tem.* It was held that the mayor *pro tem.* was authorized, in the

mayor's absence, to execute all the duties of the office, including authority to issue a valid warrant.

In *S. v. Turner*, 170 N.C. 701, 86 S.E. 1019, the appeal was based on defendant's exceptions to the court's refusal to quash the warrant and to arrest judgment. Defendant's motions were interposed "on the ground that the chief of police of High Point had no authority to take the affidavit of the complainant who applied for the warrant and signed as complainant, and, therefore, had no authority to issue the warrant." *Clark, C. J.*, said: "There are several grounds on either of which the judgment was correct. Sec. 9, ch. 569, Public-Local Laws 1913, creating the court at High Point, provides: 'All processes of said court shall be issued by either the judge of said court or by the chief of police, the same to be issued on affidavit and returnable forthwith to said court.' The statute authorizing the chief of police to issue process inferentially confers on him the power to pass upon the sufficiency of the complaint as basis for a warrant and to administer the oath before issuing the process." No reference to Article I, Section 8, appears in the opinion or in the briefs.

It seems appropriate to refer briefly to certain recent decisions of this Court in which the defendant challenged the validity of a warrant, viz.:

This Court held that a defendant's right to challenge as unconstitutional (but not as violative of Article I, Section 8) a statute authorizing the issuance of warrants by a desk sergeant, *S. v. Doughtie*, 238 N.C. 228, 77 S.E. 2d 642, and by a police lieutenant, *S. v. St. Clair*, 246 N.C. 183, 97 S.E. 2d 840, was waived when the defendant's objection was first made after trial and conviction in a court having original jurisdiction.

In *S. v. Wilson*, 237 N.C. 746, 75 S.E. 2d 924, it was held that a defendant's right to challenge as unconstitutional (but not as violative of Article I, Section 8) a statute authorizing the issuance of warrants by a police sergeant, was waived when the objection was first made in the Supreme Court.

In *S. v. McHone*, 243 N. C. 231, 90 S.E. 2d 536, and in *S. v. McHone*, 243 N.C. 235, 90 S.E. 2d 539, the justice of the peace who issued the warrants was also a police officer of Mount Airy; and the warrants were issued on affidavit of another police officer of Mount Airy. The latter decision (243 N.C. 235) was based in part on the ground that defendant's plea in abatement, by which he challenged the validity of the warrant, came too late, i.e., after trial and conviction in a court having original jurisdiction. The former decision (243 N.C. 231) was put on different grounds. There it was held that the person who is-

sued the warrant did so as authorized by G.S. 15-18 in his capacity as justice of the peace. *Winborne, J.* (later C. J.), said: "Thus in the light of the factual situation in hand, this Court deems the action of the justice of the peace to be permissible under the proviso of Sec. 7 of Article XIV of the Constitution of North Carolina. And it does not appear that such action is violative of any provision of either the State, or the Federal Constitution." Although no specific reference is made in the opinion to Article I, Section 8, this constitutional provision was brought to the attention of this Court and discussed in the briefs.

In *S. v. McGowan*, 243 N.C. 431, 90 S.E. 2d 703, there was no warrant but "at most an affidavit of a complaining witness upon which a warrant of arrest might be predicated." No question was presented as to the validity of a statute authorizing persons other than those designated in G.S. 15-18 to issue warrants.

In *S. v. Blackwell*, 246 N.C. 642, 99 S.E. 2d 867, the judgment quashing the warrant issued by a police sergeant was upheld on the ground there was no statutory authority authorizing his issuance of the warrant.

Defendant does not challenge the power of the General Assembly under Article IV, Section 12, to regulate the practice and procedure in the Recorder's Court of Red Springs District, Robeson County, "so far as the same may be done without conflict with other provisions of this Constitution." He does not attack as invalid any provision of said public-local laws except that conferring authority on the solicitor of said recorder's court to issue warrants; and the sole ground for this attack is that this particular provision of said public-local laws is violative of Article I, Section 8.

Our question is whether the General Assembly, by reason of Article I, Section 8, is prohibited from conferring such authority upon such solicitor. If not, whether, as a matter of policy, such authority should be conferred is solely for legislative determination.

In undertaking our task of decision, we are mindful that "(I)n considering the constitutionality of a statute, every presumption is to be indulged in favor of its validity." *Stacy, C. J.*, in *S. v. Lueders*, 214 N.C. 558, *561*, 200 S.E. 22. Too, ". . . under our Constitution, the General Assembly, so far as that instrument is concerned, is possessed of full legislative powers unless restrained by express constitutional provision or necessary implication therefrom." *Hoke, J.* (later C.J.), in *Thomas v. Sanderlin*, 173 N.C. 329, *332*, 91 S.E. 1028.

The only decisions cited by defendant in support of his position are *Lewis v. Commissioners*, 74 N.C. 194, *S. v. Crowder*, 193 N.C.

130, 136 S.E. 337, and *S. v. Thomas*, 236 N.C. 454, 73 S.E. 2d 283. Defendant fails to identify the portion of the opinion in *S. v. Thomas, supra*, he deems relevant to the question under consideration.

In *Lewis v. Commissioners, supra*, the opinion of Bynum, J., contains these statements, which are quoted with approval in *S. v. Crowder, supra*, viz.: "A Solicitor is not a judicial officer. He cannot administer an oath. He cannot declare the law. He cannot instruct the grand jury in the law. That function belongs to the Judge alone." *Lewis v. Commissioners, supra*, related to whether a person summoned by the Clerk of the Superior Court of Wake County to appear "to give evidence in a certain matter then and there to be inquired of by the grand jury," was, absent a statute so providing, entitled to prove a witness ticket for his appearance and attendance. In *S. v. Crowder, supra*, this Court held a plea in abatement to the bills of indictment should have been sustained when it appeared that the solicitor was with the grand jury, "participated in the examination of the witness and explained the testimony to the grand jury and advised and procured their action in finding a true bill." No reference is made in the opinions to Article I, Section 8, of our Constitution.

General statements to the effect that a solicitor (prosecuting attorney) is or is not "a judicial officer" must be considered in relation to the legal problem presented in each case. In *Lewis v. Commissioners, supra*, and in *S. v. Crowder, supra*, whether judicial power had been or could be committed to a solicitor was not presented. Nothing in the nature of a judicial act was involved.

In varied factual situations, and in relation to diverse legal problems, a prosecuting attorney has been held "a judicial officer." *Cawley v. Warren* (CA 7th), 216 F. 2d 74; *Tinder v. Music Operating* (Ind.), 142 N.E. 2d 610; *S. ex rel. Freed v. Circuit Court of Martin County* (Ind.), 14 N.E. 2d 910. In other cases, he is referred to as a "*quasi*-judicial officer," or as a public officer acting in a *quasi*-judicial capacity. *Commonwealth v. Ragone* (Pa.), 176 A. 454, 456; *Holder v. State* (Ark.), 25 S.W. 279.

A solicitor, as a public officer and as an officer of the court, is vested with important discretionary powers. True, it is his responsibility, upon a fair and impartial trial, to bring forward all available evidence and to prosecute persons charged with crime. Even so, prior to prosecution, if he finds the available evidence insufficient to support a conviction, he may enter a *nolle prosequi* or *nolle prosequi* with leave. G.S. 15-175; *Wilkinson v. Wilkinson*, 159 N.C. 265, 74 S.E. 740. In *S. v. Moody*, 69 N.C 529, Reade, J., said: "It was discussed at the bar whether it is within the power of a Solicitor to dis-

charge a defendant or to enter a *nol. pros.*, etc., or whether that is the province of the court. The rule is that it is within the *control* of the court, but it is usually and properly left to the discretion of the Solicitor." Also, see *S. v. Thompson*, 10 N.C. 613; *S. v. Buchanan*, 23 N.C. 59; *S. v. Conly*, 130 N.C. 683, 41 S.E. 534; 27 C.J.S., District & Pros. Attys. § 14(1).

The contention that the General Assembly had no power to authorize the solicitor to administer an oath is untenable and requires no discussion. Clearly, the administration of an oath does not involve the exercise of judicial powers.

True, a solicitor, absent authorization by the General Assembly, has no authority to administer an oath or to issue a warrant. Our question is whether he may lawfully do so when specifically authorized by the General Assembly.

Since the responsibility of prosecution rests on the solicitor, it would seem he would not be disposed to authorize arrests in the absence of sufficient evidence to justify trial. Indeed, the practice in the federal courts, with certain exceptions, is that no application for the issuance of a warrant is made unless first approved by the office of the district attorney.

In *S. ex rel. Freed v. Circuit Court of Martin County, supra,* the action was for a writ of prohibition to stay the prosecution of a criminal case on the ground that the respondent judge had *ordered* the prosecuting attorney *to approve* the affidavit on which the prosecution was based. The writ was granted. This excerpt from the opinion indicates the basis of decision: "It is clear that the affidavit was approved under coercion, or what seemed to be coercion. The prosecuting attorney is a judicial officer, charged with the administration of justice. Criminal prosecutions cannot be instituted by private individuals. They may be initiated by grand jury indictment. . . . Formerly the only other method was an information. For this latter procedure the Legislature substituted prosecutions by affidavit, approved by the prosecuting attorney. The public policy, evidenced by the requirement that the affidavit must be approved by the prosecuting attorney, is apparent in former statutes. Its purpose is to protect citizens against criminal actions until the charges are investigated and the prosecution approved by the officer who is by law vested with jurisdiction to act for the state. This officer is not the judge. It is the prosecuting attorney. Jurisdiction to approve, and thus make possible, the prosecution of criminal actions lies with the grand jury or the prosecuting attorney, and not elsewhere."

Whether the issuance of a warrant is a ministerial or a judicial act

is the subject of conflicting decisions, based largely on the statutes of the particular jurisdictions. In *State v. Price* (Ohio), 137 N.E. 2d 163, it was held that the issuance of a warrant (by a deputy clerk of a municipal court) was a ministerial act. In *State v. Dibble* (Conn.), 22 A. 155, it was held that the issuance of a warrant by the city attorney was a ministerial act.

In *S. v. McGowan, supra, Higgins, J.*, for this Court, said: "The issuance of a warrant of arrest is a judicial act." As the context plainly indicates, this statement was based on the provisions of G.S. 15-19 and G.S. 15-20 which vest discretionary power in officials authorized to issue warrants. We need not consider whether the General Assembly, within the limitations of Article I, Section 15, of our Constitution, has the power to authorize the issuance of warrants upon proper affidavit as ministerial acts. Relevant to the right of a police officer to arrest without warrant, see G:S. 15-41 as amended by Ch. 58, Session Laws of 1955.

Reference is made to Article I, Section 8, in the following cases:

In discussing Article I, Section 8, in the dissenting opinion in *S. v. Bell*, 184 N.C. 701, *719*, 115 S.E. 190, *Stacy, J.* (later C. J.), aptly described the judicial department of our government as "the department of trial and judgment."

It has been held that the exclusive power to establish its own rules of practice and procedure is vested in the Supreme Court by Article I, Section 8, and Article IV, Section 12, and that the General Assembly has no power to modify the rules so established. *Horton v. Green*, 104 N.C. 400, 10 S.E. 470; *Herndon v. Insurance Co.*, 111 N.C. 384, 16 S.E. 465; *S. v. Johnson*, 183 N.C. 730, 110 S.E. 782; *Cooper v. Commissioners*, 184 N.C. 615, 113 S.E. 569; *S. v. Ward*, 184 N.C. 618, 113 S.E. 775; *Hardy v. Heath*, 188 N.C. 271, 124 S.E. 564; *Lacy v. State*, 195 N.C. 284, 141 S.E. 886.

The Attorney General directs our attention to the statement of *Clark, J.* (later C. J.), in the dissenting opinion in *Wilson v. Jordan*, 124 N.C. 683, *705*, 33 S.E. 139. Referring to Article I, Section 8, he said: "The independence of the Supreme Court only (and not of the entire judicial department) is provided for." When we recall that Article I, Section 8, was a part of the Constitution of 1776, and that the Supreme Court had no constitutional status until the Constitution of 1868, we are not disposed to give full approval to the quoted statement. It is noteworthy that the Supreme Court of North Carolina was established by the General Assembly. Acts of 1818, Chapter 1. As stated by *Clark, J.* (later C. J.), in *Herndon v. Insurance Co.*, *supra:* "The Supreme Court was originally created in 1818 by legis-

lative enactment, and remained till 1868, as to its powers, its duties, its rules, even as to its very existence, subject to control by the Legislature, which could abolish or modify it since it had created it." See, Battle's History of the Supreme Court, 1 N.C. (Reprint) 837, and Clark's History of the Supreme Court, 177 N.C. 617.

In *Cox v. Kinston*, 217 N.C. 391, 8 S.E. 2d 252, the plaintiffs challenged the constitutionality of the statute creating the Kinston Housing Authority on the ground, *inter alia*, that it delegated judicial functions to the city council, a nonjudicial body, in violation of Article I, Section 8. Relevant to this ground of challenge, *Seawell, J.*, said: "As to the judicial function, the Legislature itself has none, and, therefore, the use of the word 'delegation' is not apt as regarding the power of the Legislature to confer judicial powers. The Legislature has always, without serious question, given *quasi*-judicial powers to administrative bodies in aid of the duties assigned to them, without necessarily making them courts. Such powers are given to the Utilities Commission, the Industrial Commission, the Commissioner of Revenue, the State Board of Assessment, and, in lesser degree, to many other State agencies which we might add to the list. The performance of *quasi*-judicial and administrational duties by the same board violates no implication of the cited section of the Constitution, requiring that the supreme judicial power be kept separate from the legislative and executive. Certainly the limited discretion given to these bodies is no part of the 'supreme judicial power' of the State."

A reference to Article I, Section 8, appears in the dissenting opinion of *Seawell, J.*, in *Humphrey v. Churchill, Sheriff*, 217 N.C. 530, *533*, 8 S.E. 2d 810.

This statement appears in 22 C.J.S., Criminal Law § 318: "When so provided by statute the authority to issue warrants may be vested in officers whose other duties are purely ministerial, such as clerks, sheriffs, prosecuting attorneys, coroners, mayors, and the like." Also, see 4 Am. Jur., Arrest § 9; 10 Am. Jur., Clerks of Court § 16.

Legislation authorizing clerks to issue warrants has been upheld on the ground that, although involving the exercise of a judicial or *quasi*-judicial function, the determination is in no sense a final adjudication. *Kreulhaus v. City of Birmingham* (Ala.), 51 So. 297; *Gladden v. State* (Ala.), 54 So. 2d 607; *State v. Van Brocklin* (Wis.), 217 N.W. 277.

In *Holloman v. State* (Ala.), 74 So. 2d 612, the warrant was issued by the County Solicitor upon affidavit executed before him. The court, in opinion by *Harwood, J.*, said: "While the ascertainment of

probable cause upon which to issue a warrant of arrest involves the exercise of a judicial function, as distinguished from merely administrative or ministerial powers, yet the legislature may commit such functions to ministerial officers because it is not final. (Citations)"

In *Ocampo v. United States,* 234 U.S. 91, 34 S. Ct. 712, 58 L. Ed. 1231, the information on which the prosecution was based was signed by the prosecuting attorney, after his preliminary investigation and examination of witnesses under oath, as authorized by the Act of Congress applicable to the City of Manila, Philippine Islands. The accused moved to vacate the order of arrest "upon the ground that it was made without any preliminary investigation held by the court, and without any tribunal, magistrate, or other competent authority having first determined that the alleged crime had been committed, and that there was probable cause to believe the defendants guilty of it." The Supreme Court of the United States, in opinion by Mr. *Justice Pitney,* said: "It is insisted that the finding of probable cause is a judicial act, and cannot properly be delegated to a prosecuting attorney. We think, however, that it is erroneous to regard this function . . . as being judicial in the proper sense. There is no definite adjudication. A finding that there is no probable cause is not equivalent to an acquittal, but only entitles the accused to his liberty for the present, leaving him subject to rearrest. . . . In short, the function of determining that probable cause exists for the arrest of a person accused is only *quasi* judicial, and not such that, because of its nature, it must necessarily be confided to a strictly judicial officer or tribunal." It was held that said motion was properly overruled.

Story, in his Commentaries on the Constitution of the United States (1833), Vol. 2, § 524, said: "But when we speak of a separation of the three great departments of government, and maintain, that that separation is indispensable to public liberty, we are to understand this maxim in a limited sense. It is not meant to affirm, that they must be kept wholly and entirely separate and distinct, and have no common link of connexion or dependence, the one upon the other, in the slightest degree. The true meaning is, that the whole power of one of these departments should not be exercised by the same hands, which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free constitution."

We forbear extended discussion of the term "judicial power." 16 C.J.S., Constitutional Law § 144; 11 Am. Jur., Constitutional Law § 202. This quotation from *Muskrat v. United States,* 219 U.S. 346,

31 S. Ct. 250, 55 L. Ed. 246, indicates its essential nature: "'Judicial power,' says *Mr. Justice Miller,* in his work on the Constitution, 'is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.' Miller, Const. 314."

Article I, Section 8, providing that "(T)he legislative, executive, and supreme judicial powers of the government ought to be forever separate and distinct from each other," is to be considered as a general statement of a broad, albeit fundamental, constitutional principle.

Defendant has not cited, nor has our research disclosed, any decision in which legislation authorizing the issuance of warrants by officials other than those whose functions are exclusively or primarily judicial in character has been declared void as violative of such a constitutional provision.

While we do not presently undertake to mark out the precise meaning of Article I, Section 8, we have no difficulty in concluding that the issuance of a warrant, whether considered a judicial act, a *quasi-*judicial act, a judicial function, or a ministerial act, does not require or involve the exercise of *supreme judicial power* within the meaning of that term as used in Article I, Section 8.

Therefore, we hold that the said public-local laws are not void as violative of Article I, Section 8; and that the court erred in quashing the warrants.

Reversed.